IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-00287-01-CR-W-DW |
| | ) | |
| DONALD R. MONTGOMERY, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant's Motion to Suppress Evidence (doc #54). For the reasons set forth below, it is recommended that the motion be denied.

I. BACKGROUND

On September 26, 2012, the Grand Jury returned a one-count indictment against defendant Donald R. Montgomery. The indictment charges that on September 25, 2012, defendant, having been convicted of crimes punishable by imprisonment for terms exceeding one year, possessed a firearm, to wit, a Cobra brand, .38 caliber derringer, which had been transported in interstate commerce.

An evidentiary hearing on the motion to suppress was held on June 5, 2014. Defendant Montgomery was represented by Assistant Federal Public Defender Robert G. Kuchar. The government was represented by Assistant United States Attorney David A. Barnes. The government called Officer Patrick Moss and Detective Eric Johnson of the Kansas City, Missouri Police Department as witnesses. The defense called no witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence presented at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On September 25, 2012, Officer Patrick Moss was a patrol officer in East Patrol, 10 Sector. (Tr. at 3) The area encompasses from about 12th Street north to the river and from about Prospect all the way to the Independence city limits. (Tr. at 3-4) Officer Moss testified that it is an older neighborhood that has "a lot of property crimes issues, be it stealing copper, car thefts, drugs. Just about any crime that you can think of is rampant in our area." (Tr. at 4)

2. A couple of weeks before September 25, 2012, Officer Moss had received information from another officer about stolen autos in the back of a house and about it being a chop shop. (Tr. at 5) Officer Moss described a chop shop as a place where stolen vehicles are cut into pieces and the parts are then sold. (Tr. at 5) On September 18, 2012, Officer Moss and his partner, Officer Eric Johnson, went to the house at 905 Newton. (Tr. at 5-6) As the officers were driving down the alley, they observed an individual with a grinder actively cutting on a car. (Tr. at 6) The officers arrested the person who was chopping up the car. (Tr. at 7) The officers also noticed that there was some theft of utilities happening at the residence. (Tr. at 7) The color code on the power box was red which means that there should have been no electricity at the house. (Tr. at 7) The officers contacted KCP&L. (Tr. at 7) KCP&L came out and cut the cord from the transformer to the house due to the occupants of the house being so far behind on their utility bills. (Tr. at 7) The officers also had City Codes come to the residence and they said the house would be shut down if it did not have hot water within two days. (Tr. at 7)

3. At approximately 7:35 a.m. on September 25, 2012, Officer Moss and Officer Johnson were patrolling around the area of 9th and Newton. (Tr. at 5, 12) The officers were in a marked car and were in uniform. (Tr. at 12) The officers decided to drive by and see if there were any stolen cars in the back of the house like there had been the week before. (Tr. at 8) Officer Johnson testified that in addition to the incident on September 18, 2012, there had been other instances of auto theft and scrap metals being at that address and that it had just been a nuisance house. (Tr. at 38) The alley behind the house at 905 Newton is a public thoroughfare. (Tr. at 8)

4. The officers observed a 2002 gold Ford Windstar van parked behind the address. (Tr. at 10) Officer Moss testified that minivans are prevalent among stolen autos. (Tr. at 10) The officers parked their patrol vehicle in the alley and got out to see if the minivan was stolen and just waiting to be chopped up. (Tr. at 10, 41) As the

2

officers walked up to the minivan, they saw a bunch of copper pipes in the back of the minivan. (Tr. at 10) Officer Johnson testified that there is a ready market for stolen copper at the scrap yards which are located in the East Patrol district. (Tr. at 37) The officers also observed two individuals sleeping in the minivan. (Tr. at 10)

5. The officers walked around the house at 905 Newton to see if the items that Codes said needed to be fixed the week before were fixed. (Tr. at 11) The officers encountered a gentleman in the side yard that on September 18 had said he lived there. (Tr. at 11, 38) The officers asked the gentleman if he knew anything about the van or the people in the van. (Tr. at 11) The gentleman indicated that he had not given anyone permission to be parked in the backyard.[1] (Tr. at 11)

6. Officer Moss testified that based on his training and experience, he suspected that criminal activity was afoot with regard to the possession or transportation of stolen copper piping. (Tr. at 12) Officer Moss knocked on the driver's window of the minivan. (Tr. at 12) The driver woke up and rolled down the window and Officer Moss asked him why he was parked in the yard. (Tr. at 12) The driver's ID had an address on Crescent and when asked by Officer Moss if he still lived at that address, the driver replied, yes, on Crescent, so Officer Moss inferred that the driver did not live at 905 Newton. (Tr. at 13, 31) Officer Moss ran the driver's name with dispatch. (Tr. at 13) Dispatch advised that he had two city warrants for his arrest. (Tr. at 13, 39) Officer Moss asked the driver (defendant Montgomery) to get out of the vehicle. (Tr. at 13, 39)

7. Officer Moss testified that up to this point, defendant Montgomery was pretty cooperative. (Tr. at 13) However, when Officer Moss asked him to get out of the vehicle, Officer Moss could tell that Montgomery did not really want to get out. (Tr. at 13) Montgomery started leaning forward and started rubbing his right front pants pocket with his right hand. (Tr. at 13, 39) Officer Moss thought that Montgomery had some drugs or paraphernalia of some sort in his pocket. (Tr. at 14) Officer Moss told Montgomery to get out of the van or Moss would remove Montgomery from the van. (Tr. at 14) As Montgomery was getting out of the van, Officer Moss told him to put his hands behind his back. (Tr. at 14) Officer Moss was going to place Montgomery under arrest on the city warrants. (Tr. at 14) Officer Moss had the handcuffs in his hands. (Tr. at 14) Officer Moss had a hold of Montgomery's right hand as Montgomery flailed his arms and tried to run from the scene. (Tr. at 14, 40) Officer Moss took Montgomery to the ground. (Tr. at 15, 40) Officer Moss and Officer Wilson, an officer who had come by

---

[1] The Court notes that defense counsel objected to Officer Moss' testimony as to what this person told him on the basis of hearsay. (Tr. at 11, 29) However, the Court may rely on hearsay evidence at a suppression hearing. See United States v. Thompson, 533 F.3d 964, 969 (8th Cir. 2008)(citing United States v. Raddatz, 447 U.S. 667, 679 (1980)).

3

when he heard that Officers Moss and Johnson were conducting a car check, tried to get Montgomery's hands behind his back while telling him to stop resisting. (Tr. at 15, 40) Montgomery continued to try to reach into his right front pocket. (Tr. at 15) Montgomery was ultimately handcuffed. (Tr. at 15-16) Officer Moss then did a pat-down of Montgomery for officer safety and incident to his arrest and discovered a pistol in Montgomery's right front pocket. (Tr. at 16, 40-41)

8. Officer Wilson suffered an injury to his hand as a result of trying to handcuff defendant Montgomery. (Tr. at 16) Montgomery was also a little scraped up. (Tr. at 16)

9. Officer Moss confirmed that defendant Montgomery was a felon. (Tr. at 17) While Officer Moss was initially going to arrest Montgomery on the outstanding warrants, Montgomery was ultimately placed under arrest for being a felon in possession of a firearm. (Tr. at 17)

10. Officer Moss testified that his plan, after placing defendant Montgomery under arrest, was to conduct an inventory search of the minivan and have it towed. (Tr. at 14)

### III. DISCUSSION

Defendant Montgomery seeks to suppress "all evidence and testimony relating to such evidence obtained as a result of the search of Mr. Montgomery's person on September 25, 2012." (Motion to Suppress Evidence (doc #54) at 5) Defendant argues that he was an overnight guest of 905 Newton Avenue, that he spent several nights a week at 905 Newton and that he considered 905 Newton Avenue to be his part-time residence. (Id. at 1) Defendant further argues that officers entered the curtilage of the private property of 905 Newton without a warrant or court ordered permission and that the officers forcibly removed defendant from the vehicle before they knew he had any outstanding warrants. (Id. at 2) Thus, defendant argues that his Fourth Amendment rights were violated when "1) the officer entered the curtilage of 905 Newton, Kansas City, Missouri without a search warrant; 2) when the officers forcibly removed the defendant from a parked vehicle and placed him under arrest before they learned about his outstanding arrest

4

warrant; and 3) the search of the defendant's person was a product of the officers' unlawful entry onto the property of 905 Newton and the unlawful detention of the defendant." (Id. at 4-5)

Fourth Amendment rights are personal and may not be asserted vicariously. See United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999); United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994). The Eight Circuit Court of Appeals stated in Gomez:

> If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally. The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched. Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

Id. (citations omitted)

While defendant Montgomery argues that the parked van in which he slept was within the curtilage of the residence at 905 Newton, no evidence was presented to the Court to suggest that defendant was a guest at 905 Newton who should be afforded privacy interests similar to those of the homeowner. Rather, the only evidence presented at the hearing was that when the officers asked a man in the yard of the residence, whom the officers believed lived at the residence, if he knew anything about the van or the people in the van, the man indicated that he had not given anyone permission to be parked in the backyard. (See Fact No. 5, supra) Further, defendant's ID had an address on Crescent and when asked by Officer Moss if he still lived at that address, defendant replied, yes, on Crescent, so Officer Moss inferred that defendant did not live at 905 Newton. (Id.) While defendant Montgomery argues in his motion that he was a frequent visitor to 905 Newton and considered it to be his part-time residence, no such evidence has been presented

5

to the Court. Absent a reasonable expectation of privacy in 905 Newton, defendant lacks standing to challenge the officers' entry onto the curtilage of 905 Newton.

Next, defendant asserts that his Fourth Amendment rights were violated "when the officers forcibly removed the defendant from a parked vehicle and placed him under arrest before they learned about his outstanding arrest warrant." Again, the evidence presented at the hearing was contrary to defendant's assertions in his motion. Dispatch had advised Officer Moss that defendant Montgomery had two city warrants for his arrest prior to Officer Moss asking Montgomery to exit the vehicle. (See Fact No. 6, supra)

Finally, contrary to defendant's argument that the search of his person was a product of his unlawful detention, the Court finds that the officers were justified in conducting an investigative stop of defendant and the search that followed was done incident to his arrest as well as for officer safety reasons. While the Fourth Amendment protects citizens from unreasonable searches and seizures, officers may briefly detain and ask questions of people whom they reasonably suspect of criminal activity. See United States v. Chhunn, 11 F.3d 107, 109 (8th Cir. 1993)(citing Terry v. Ohio, 392 U.S. 1 (1968)). An investigative stop need only be supported by a reasonable, articulable suspicion that criminal activity may be afoot. See United States v. Raino, 980 F.2d 1148, 1149 (8th Cir. 1992), cert. denied, 507 U.S. 1011 (1993). The record in this case establishes that while patrolling in an area known for property crimes and specifically at the address of 905 Newton where there had been instances of auto theft and scrap metals, Officers Moss and Jonson observed a parked minivan with a "bunch of copper pipes in the back" and two persons asleep in the van. (See Fact Nos. 1 through 4, supra) The officers contacted a person they believed lived at the residence and were advised that he had not given anyone permission to be parked in the backyard. (See Fact No. 5, supra) Officer Moss testified that based on his

training and experience, he suspected that criminal activity was afoot with regard to the possession or transportation of stolen copper piping. (See Fact No. 6, supra) The Court finds that at this point, the officers had a reasonable, articulable suspicion that the persons in the van may have been engaged in criminal activity and were justified in contacting them. The person seated in the driver's seat of the minivan (defendant Montgomery) provided his name and ID to Officer Moss. (See Fact No. 6, supra) Officer Moss ran the name with dispatch and dispatch advised that Montgomery had two city warrants for his arrest. (Id.) When Officer Moss asked defendant Montgomery to exit the vehicle, Montgomery attempted to flee, struggled with the officers and attempted to reach into his pocket. (See Fact No. 7, supra) Montgomery was eventually handcuffed, placed under arrest and patted down. (Id.) There was no Fourth Amendment violation.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Montgomery's Motion to Suppress Evidence (doc #54).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                 */s/ Sarah W. Hays*
                                                 SARAH W. HAYS
                                     UNITED STATES MAGISTRATE JUDGE